JANET KLINE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kline v. Commissioner
Docket Nos. 15499-92, 15501-92
United States Tax Court
T.C. Memo 1994-397; 1994 Tax Ct. Memo LEXIS 406; 68 T.C.M. (CCH) 425; 94-2 U.S. Tax Cas. (CCH) P47,959; August 18, 1994, Filed *406 Decision will be entered for respondent. For petitioner: Peter Driscoll. For respondent: Michael A. Pesavento. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined additions to petitioners' Federal income tax as follows: Additions to Tax Year
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1982
$   498
$  8,149
$ 2,491
1983
1,040
17,545
5,202
The additions to tax here are attributable to a partnership loss from the American Indian Venture Capital Partnership (the partnership) that was claimed on the 1983 joint income tax return of petitioner and Frank Kline (Kline) and carried back to their 1982 joint return. The underlying adjustments relating to the partnership were resolved in American Indian Venture Capital, Melvin Kline, Tax Matters Partner, docket No. 17697-87. The sole issue for decision here is whether petitioner is entitled to relief from liability for the additions to tax as an innocent spouse under section 6013(e). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated *407 facts are incorporated in our findings by this reference. At the time the petition was filed, petitioner resided in Ellicott City, Maryland. Petitioner attended the University of Maryland for 3-1/2 years and has also attended vocational training and adult education courses. In 1976, petitioner, who was working as a bank teller, married Kline. Petitioner left her job as a bank teller shortly after her marriage to Kline. Petitioner and Kline had three children and are presently divorced. Shortly after petitioner and Kline were married, Kline and his brother Melvin Kline started Kline Paper Mill Supplies, Inc. (Kline Paper Mill), which bought trash paper and sold it to paper mills for recycling. This business was successful, and Kline's salary from Kline Paper Mill was $ 267,853, $ 312,142, $ 169,885, and $ 211,623 during 1980 through 1983, respectively. Petitioner knew what Kline's salary was during these years, because she asked him and he told her. Kline was not evasive or deceitful towards petitioner during their marriage, and, during 1980 through 1984, petitioner and Kline had an amicable and good marriage, characterized by a high degree of mutual trust. Petitioner was *408 a housewife, and Kline managed the family finances. Petitioner and Kline had a joint checking account, and petitioner had possession of the checkbook. Petitioner used the checking account to pay for groceries, clothes, and items for the children. At the beginning of the marriage, Kline would make deposits into this checking account when petitioner needed money. Starting around 1981, Kline made regular deposits of approximately $ 2,000 per month into this checking account. Occasionally, Kline asked petitioner to go to the bank to make the deposits. The bank statements for this checking account went directly to an accountant who balanced the checkbook. Kline received checking account statements from the accountant, and Kline showed petitioner one of the statements prepared by the accountant. Petitioner also had credit cards that were in her and Kline's names. Petitioner used the credit cards to purchase items when their cost exceeded what she thought was in the checking account. Kline paid the other family bills, such as the gas bill, and petitioner did not review such bills. In the early 1980s, petitioner was present during a conversation between Kline and his brother Joel *409 Kline, relating to an investment in the partnership. The partnership involved bingo parlors on Seminole Indian reservations in Florida. Kline informed petitioner that he was considering investing in the partnership, and petitioner told Kline that she did not want to get involved in an investment with Joel Kline because Joel Kline had been indicted on stock manipulation and stock fraud in the late 1960s and early 1970s and had served time in a Federal penitentiary. Despite petitioner's objections, Kline invested in the partnership. An accountant prepared the income tax returns of petitioner and Kline. The income tax returns of petitioner and Kline were audited almost every year, and petitioner was aware of these audits. On their 1982 income tax return, petitioner and Kline reported adjusted gross income of $ 109,881 and a tax liability of $ 9,965. On their 1983 income tax return, petitioner and Kline reported income of $ 240,180. They also reported a loss from the partnership of $ 189,867, which, when combined with other losses and deductions, resulted in a loss of $ 124,062 and no tax liability. On November 29, 1984, petitioner and Kline filed a Form 1045, Application for *410 Tentative Refund, that applied a net operating loss of $ 60,876 from 1983 as a carryback to 1982. This net operating loss carryback resulted in a zero tax liability for 1982. Other than sometimes looking at the bottom line, petitioner did not read or review the income tax returns before she signed them. On April 3, 1992, respondent sent to petitioner and Kline joint notices of deficiency, determining additions to tax for 1982 and 1983 that were attributable to the partnership losses claimed in 1983 and carried back to 1982. OPINION The additions to tax here are "affected items" as defined in section 6231(a)(5) that require factual determinations to be made at the partner level. . Petitioner's only argument is that she should be relieved of liability for the additions to tax as an innocent spouse under section 6013(e). In general, when a husband and wife file a joint Federal income tax return, they are jointly and severally liable for the tax due. Sec. 6013(d)(3). To alleviate some of the harsh results of this rule, Congress enacted special provisions to relieve a spouse from liability for such tax *411 (including interest, penalties, and other amounts), but only if the spouse satisfies certain conditions. Sec. 6013(e)(1). To qualify for section 6013(e) relief, a spouse must show that: (1) A joint return was filed for the year in issue; (2) the return contained a substantial understatement of tax; (3) such understatement is attributable to grossly erroneous items of the other spouse; (4) in signing the return, the spouse did not know, and had no reason to know, that the return contained a substantial understatement of tax; (5) when considering all the facts and circumstances, it would be inequitable to hold the spouse liable for the deficiency in tax attributable to the substantial understatement; and (6) in the case of an understatement attributable to a grossly erroneous item of deduction, credit, or basis, the understatement exceeds a specified percentage of the adjusted gross income for the spouse's preadjustment year. Sec. 6013(e); , affd. . Failure to meet any one of the statutory requirements will prevent petitioner from qualifying for relief *412 under section 6013(e). , affg. . Respondent concedes that joint returns were filed for the years in issue, that the returns contained a substantial understatement of tax, and that the understatements are attributable to grossly erroneous items of Kline. Respondent, however, contends that petitioner is not entitled to relief under section 6013(e) because, when petitioner signed the returns for 1982 and 1983, she knew, or had reason to know, that the returns contained a substantial understatement and because the understatement does not exceed the specified percentage of adjusted gross income for petitioner's preadjustment year. Generally, a taxpayer has knowledge of a substantial understatement of tax if he or she has knowledge of the circumstances that gave rise to the substantial understatement. Purcell v. Commissioner, 826 F.2d at 474; . We hold spouses to this standard irrespective of whether the substantial understatement is due *413 to an omission of income or to a claim of deduction. , affd. on other grounds . The substantial understatements here arose from deductions of the partnership losses, and the record indicates that petitioner was aware of Kline's investment in the partnership as well as the unusual nature of the business activity of the partnership (Seminole Indian bingo parlors). Thus, under Bokum, petitioner does not satisfy the lack of knowledge requirement. In her trial memorandum, petitioner cites , revg. an Oral Opinion of this Court, in support of her contention that she is an innocent spouse. At the conclusion of trial, petitioner's attorney was directed to submit a brief addressing, among other things, whether the standard set forth in Price should be followed in a case appealable to the Court of Appeals for the Fourth Circuit; however, petitioner's attorney failed to submit any brief. In any event, we are satisfied that the facts here are distinguishable from Price *414 . There, the wife seeking innocent spouse relief had reviewed the joint return and made inquiries of her husband about deductions that she thought were "a bit much." . The wife signed the joint return only after the husband assured her that the accountant would not have put his name on the return if there were problems. Here, petitioner admits that she did not review the returns in issue before she signed them. The partnership loss that was deducted on the 1983 joint return was almost 80 percent of the reported income, and the partnership loss that was carried back to 1982 resulted in a zero tax liability for that year, despite a reported adjusted gross income of $ 109,881. As the Court of Appeals for the Ninth Circuit noted in Price, a spouse seeking innocent spouse relief in a deduction case cannot turn "a blind eye to -- by preferring not to know of -- facts fully disclosed on a return, of such a large nature as would reasonably put such spouse on notice that further inquiry would need to be made". . See also , *415 affg. . In these circumstances, we hold that petitioner does not satisfy the lack of knowledge requirement and thus does not qualify for relief as an innocent spouse under section 6013(e). As a result, we need not address whether petitioner satisfies the remaining requirements of section 6013(e). Decisions will be entered for respondent.